UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE: MICHAEL CHRISTOPHER WIBRACHT, <br><br> *Debtor*, | § <br> § <br> § Chapter 7 <br> § Case No. SA-21-50477-CAG <br> § |
| JOHN PATRICK LOWE, <br><br> *Appellant*, <br><br> v. <br><br> LAURA WIBRACHT <br><br> *Appellee*. | § <br> § <br> § <br> § <br> § <br> § Civil Action No.  SA-22-CV-365-XR <br> § <br> § <br> § <br> § <br> § |

## ORDER

On this date, the Court considered Appellant John Patrick Lowe's appeal from an order of the Bankruptcy Court denying his objection to Claim #20-1 of Laura Wibracht. ECF No. 3-2 at 208–27. The Court has considered the record, applicable law, and the parties' Briefs, including Appellant's Brief (ECF No. 2), Appellee's Brief (ECF No. 6), and Appellant's Reply Brief (ECF No. 8). For the reasons stated below, the judgment of the Bankruptcy Court is **VACATED** and the case is **REMANDED** to the Bankruptcy Court for further proceedings in accordance with the Court's finding that Claim #20-1 is not a priority domestic support obligation.

## BACKGROUND

Michael Wibracht (Debtor) and his wife Laura Wibracht (Appellee) married in April of 2007. ECF No. 3-2 at 133 (Laura Wibracht's Response to Trustee's Objection). Laura Wibracht became pregnant shortly after marriage and had the couple's first child in May of 2008. *Id*. The couple ultimately had three more children over the course of the next four years, and Laura

1

Wibracht was a stay-at-home mother. *Id*. She did not finish her degree, which she was pursuing at the time of marriage, so she could stay home and raise her children. *Id*. She has not been employed since 2007. *Id*. Michael Wibracht had graduated from Texas A&M at the time the couple became married, and he operated his own businesses. *Id*. Debtor Michael Wibracht initiated divorce proceedings in 2015 and a settlement was ultimately reached one year later. *Id*.

One June 23, 2016, Laura Wibracht executed an Employment Agreement (ECF No. 3-2 at 142–49 (Employment Agreement)) with 210 DG, LLC, one of Michael Wibracht's companies. *Id*. Michael Wibracht served as the President of 210 DG, LLC at the time the Employment Agreement was entered into. *See id*. at 149.

The Employment Agreement executed between Laura Wibracht and 210 DG, LLC provided that Laura would be paid $7,000 a month for 8 years ("salary claim"), beginning in July of 2016 and extending through June 30, 2024. *Id*. at 143. The Employment Agreement also provided that Laura would be entitled to receive half of any bonuses paid to Michael Wibracht. *Id*. at 143–44. Laura Wibracht's duties as an Employee included "assisting Company President with personal family matters as requested." *Id*. at 150 (Attachment A to Employee Agreement). The Employment Agreement provided that Laura Wibracht would work remotely and have no dedicated space at the Company's office, and that she could "refuse any assignment for any reason with written notice to Employer." *Id*. The Agreement was signed by Michael Wibracht, as President of 210 DG, LLC, Mark Tolley, Partner of 210 DG, LLC, and Laura Wibracht, Employee of 210 DG, LLC. *Id*. at 149 (Employment Agreement).

An Agreement Incident to Divorce was executed by Michael and Laura Wibracht during the course of their divorce proceedings.[1] The Final Decree of Divorce was executed on June 24,

---

[1] The Court has not been provided with the original Agreement Incident to Divorce that was referenced in the Divorce Decree.

2016. ECF No. 3-2 at 168 (Final Decree of Divorce). The Final Decree noted "that the parties have entered into an Agreement Incident to Divorce, in a document separate from this Final Decree of Divorce. The Court approve[d] the agreement and incorporate[d] it by reference as part of this decree as if it were recited herein verbatim and order[ed] the parties to do all things necessary to effectuate the agreement." *Id*. at 169. An Amended Agreement Incident to Divorce was signed on July 12, 2016. ECF No. 3-2 at 151–67 (Amended Agreement Incident to Divorce). The Amended Agreement Incident to Divorce references the Employment Agreement. *See id.* at 154, 157. The Amended Agreement Incident to Divorce was not referenced in the Final Decree of Divorce. *See id*. at 168–96.

In October of 2017, Debtor, as a managing member of 210 DG, LLC, terminated the Employment Agreement with Laura. Laura initiated enforcement proceedings in state court and demanded enforcement of the Employment Agreement under Chapter 9 of the Texas Family Code (providing remedy for division of property). ECF No. 3-2 at 197–203 (Order on Laura Wibracht's Motion to Compel / Enforce Arbitration and Employment Agreement Obligations).

The state court found, after a hearing on May 31, 2018, that the "Divorce Decree, the Agreement Incident to Divorce and the Employment Agreement were all part of and entered as a result of the divorce between Michael C. Wibracht and Laura Wibracht under this cause." *Id*. at 198.

The Employment Agreement provided for arbitration and thus, Laura brought her salary claim for breach of the Employment Agreement through arbitration. On January 29, 2019, the arbitrator awarded her $652,544.26, reflecting the balance remaining of her salary claim. Michael Wibracht did not appear at the arbitration and wholly made default, as did Mark Tolley and 210 DG, LLC. ECF No. 3-2 at 204 (Final Judgment). The State Court approved the arbitration award

as a final judgment rendered in her favor on April 6, 2021. *Id*. at 205. The judgment was granted in Laura Wibracht's favor and against Michael Wibracht, Mark Tolley, and 210 DG, LLC, jointly and/or severally for damages for breach of contract, court costs, and attorney's fees in the amount of $652,544.26. *Id*.

On April 22, 2021, Debtor Michael Wibracht filed his Chapter 7 petition. ECF No. 3-2 at 3–80 (Voluntary Petition for Individuals Filing for Bankruptcy). On July 24, 2021, Laura Wibracht filed a Proof of Claim in the amount of $652,544.26 on the Claims Register ECF No. 3-5 (Proof of Claim 20-1). She also filed a Proof of Claim in the amount of $10,840.15 on the Claims Register as a domestic support obligation. ECF No. 3-4 (Proof of Claim 19-1), which the Trustee moved for payment of and which the Bankruptcy Court approved.

Chapter 7 Trustee John Lowe filed the objection to Claim #20-1, which is the claim at issue in this appeal. Laura Wibracht maintains that despite its label, the Employment Agreement executed on June 23, 2016 is a domestic support obligation, and thus Claim #20-1 is not subject to avoidance and must be given priority status. Trustee objected (ECF No. 3-2 at 125 (Trustee's Objection)) and Laura Wibracht responded ECF No. 3-2 at 132 (Laura Wibracht's Response).

The Bankruptcy Court held a hearing on Trustee's objection to Claim #20-1 of Laura Wibracht on February 11, 2022. ECF No. 3-3 (Hearing Transcript). At the hearing, Laura Wibracht testified that "she understood her duties, as part of the Employment Agreement, were to "assist[] Company President with personal family matters as requested." *Id*. at 18. She further testified that the purpose of the Agreement was to allow her to "stay home and watch [their] children and be a stay-at-home mom" and "also a way for [her] to keep [her] health insurance." *Id*. at 19.

4

The Bankruptcy Court issued an order denying Trustee's objection on March 31, 2022. ECF No. 3-2 at 208–27. This appeal timely followed. Since Appellant filed notice of this appeal, both Appellant and Appellee have briefed the Court. *See* ECF Nos. 2, 6, 8.

## APPELLANT'S ISSUES ON APPEAL

1. Is the 2016 Employment Agreement between Debtor's ex-Wife and his employer 210 DG, LLC a priority domestic support obligation of the Debtor?

2. Is the proof of claim objectionable because it is based on a default Final Judgment which is avoidable as a constructively fraudulent transfer, where it is based upon the 2016 Employment Agreement that was:

    a. between Debtor's ex-Wife and his employer 210 DG, LLC;

    b. makes the Debtor liable for 210 DG, LLC's debt to the ex-Wife, through a private default arbitration award signed less than two years before the Debtor's bankruptcy petition; and

    c. publicly entered as a default judgment by the Texas District Court a month before the Debtor's bankruptcy filing?

## DISCUSSION

### I. Appellate Standard of Review

A district court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges. *See* 28 U.S.C. § 158(a). On appeal, a bankruptcy judge's conclusions of law are reviewed *de novo*, whereas findings of fact will not be set aside unless they are found to be clearly erroneous. *In re National Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000). The district court reviews mixed questions of law and fact *de novo*. *Id*.

The court reviews discretionary decisions of the bankruptcy court for abuse of discretion. *See Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1270 (5th Cir. 1997). A bankruptcy court abuses its discretion when "its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).

**II.     Analysis**

**A.  Domestic Support Obligation**

Appellant's first issue on appeal is that the Bankruptcy Court incorrectly held that the 2016 Employment Agreement between Laura Wibracht and Michael Wibracht's company, 210 DG, LLC, is a priority domestic support obligation of the Debtor. For the following reasons, the Court agrees with Appellant. The Employment Agreement is not a priority domestic support obligation, and thus Appellant's objection to the classification of the claim was incorrectly denied by the Bankruptcy Court.

In bankruptcy proceedings, an individual debtor is not discharged from any debt for a domestic support obligation. 11 U.S.C. § 523(a)(5). In determining dischargeability under § 523(a), the creditor has the burden of proving all elements of the claim for relief, supported by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991) (interpreting the legislative history of § 523(a)); *see also In re Gauthier*, 349 F. App'x 943, 945 (5th Cir. 2009) ('[T]the creditor claiming nondischargeability . . . has the burden of proving, by a preponderance of the evidence, that the debt is exempt from discharge.").A domestic support obligation is defined as:

> "a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable non-bankruptcy law notwithstanding any other provision of this title, that is—

> (A) owed to or recoverable by—
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>> (i) a separation agreement, divorce decree, or property settlement agreement;
>> (ii) an order of a court of record; or
>> (iii) a determination made in accordance with applicable non-bankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14). Property of an estate is distributed in accordance with § 726, requiring payment of priority claims first, followed second by payment of any allowed unsecured claims. 11 U.S.C. § 726.

The Court first turns to examine § 101(14)(C), requiring that the debt be established by "a separation agreement, divorce decree, or property settlement agreement[,] an order of a court of record[,] or a determination made in accordance with applicable non-bankruptcy law by a governmental unit." 11 U.S.C. § 101(14)(C).

Conducting a *de novo* review, the Court finds that the salary claim in the Employment Agreement was not established by an order of a court of record. The Final Decree of Divorce, signed one day after the Employment Agreement was executed, does not mention the Employment Agreement. ECF No. 3-2 at 151–67. It mentions only the Agreement Incident to Divorce, which has not been provided as part of the record of this case. The Amended Agreement Incident to

Divorce was not executed until July 12, 2016, more than two weeks after the Final Decree of Divorce. Thus, the obligations laid out in the Employment Agreement are not established in the Final Decree of Divorce.

Appellee next argues that the State Court, in its hearing on May 31, 2018 and subsequent order signed on January 18, 2019, held that the Employment Agreement was entered into and part of the Final Decree of Divorce. ECF No. 6 at 9. The Court disagrees. That state court order found that "the Decree of Divorce, the Agreement Incident to Divorce, and the Employment Contract entered by the parties June 23, 2016 and signed by the Court on June 24, 2016 were all part of and entered as a result of the divorce between Michael C. Wibracht and Laura Wibracht under this cause." ECF No. 3-2 at 198. However, in that order, Texas District Judge Mery enforced the Employment Agreement only with regards to the mortgage and real property taxes for the Appellee's residence under Chapter 9 of the Texas Family Code. Judge Mery specifically found that the provisions of the Employment Agreement related to the salary claim were dismissed without prejudice as they were "not enforceable under Chapter 9 of the Texas Family Code." *Id*. at 199.

Finally, Appellee argues that the Employment Agreement is a property settlement agreement and thus satisfies 11 U.S.C. § 101(14)(C). Appellee argues that "the State Court has already found that portions of the Employment Agreement are enforceable under Chapter 9 of the Texas Family Code, the chapter that governs property settlements." ECF No. 6 at 11. Appellee contends that the while the State Court found that Laura's salary claim was not enforceable under Chapter 9, because there was no finding that the claim would not be enforceable under Chapter 8 (providing the remedy for support payments), the State Court "left the door open for Laura to prosecute the salary claims under other remedies which would include Chapter 8 . . . ." *Id*. at 12.

8

The Court disagrees. By its terms, the Employment Agreement is not a property settlement agreement as it pertains to the salary claim. As previously explained, Judge Mery's finding that only certain terms of the Employment Agreement were enforceable under Chapter 9 of the Texas Family Code (specifically, the terms related to the payment of the mortgage and real property taxes) undermines Appellee's argument that the Employment Agreement, as a whole and including the salary claim, is a property settlement agreement. ECF No. 3-2 at 199. Judge Mery specifically found that salary claim was not enforceable under Chapter 9 of the Texas Family Code. Appellee has not, by a preponderance of the evidence, established that the entire Employment Agreement, specifically including the salary claim therein, is a property settlement agreement.

Because Appellee fails to establish that 11 U.S.C. § 101(14)(C) is satisfied, the Court ends its analysis there and does not resolve whether the other requirements of § 101(14) have been met. The Court holds that the Employment Agreement is not a domestic support obligation and thus is not entitled to priority status under § 101(14) and § 726(a)(1). The appropriate enforcement remedy here is for salary owed from a breached employment agreement contract, not a domestic support obligation in the nature of alimony.

### B. Constructively Fraudulent Transfer

Appellant next argues that Claim #20-1 is avoidable as a constructively fraudulent transfer, because (a) it is based on the Employment Agreement between Laura Wibracht and 210, DG LLC, (b) makes Debtor liable for 210 DG, LLC's debt to Laura Wibracht through a private default arbitration award signed less than two years before the Debtor's bankruptcy petition, and (c) was publicly entered as a default judgment by the Texas District Court only one month before the Debtor's bankruptcy filing. However, because the Court has resolved that the Employment Agreement is not a spousal debt obligation under 11 U.S.C. § 101(14), and that Appellant's

objection to the classification of Claim #20-1 was proper, the Court need not resolve Appellant's remaining issues raised in this appeal. The Court does, however, note its serious doubts about whether Debtor Michael Wibracht was found to be a party to the Employment Agreement's salary claim provisions at any point before the Final Judgment entered by Judge Gonzales was ordered on April 6, 2021. Indeed, Judge Mery's order, which Appellee contends found Michael Wibracht a party to the Employment Agreement, was discussing his individual liability only with regards to mortgage and real property taxes for the Appellee's residence, not the salary claim. ECF No. 3-2 at 199.

## CONCLUSION

The Court has carefully considered the record and the arguments and authorities presented in Appellant's Brief (ECF No. 2), Appellee's Brief (ECF No. 6), and Appellant's Reply Brief (ECF No. 8). The Court has conducted a *de novo* review of the Bankruptcy Court's order denying Appellant's objection to Claim #20-1 of Laura Wibracht and for the foregoing reasons, Appellant's objection to Claim #20-1 is **SUSTAINED** and the Bankruptcy Court's order is hereby **VACATED**. The case is **REMANDED** to the United States Bankruptcy Court for the Western District of Texas for further proceedings in accordance with the Court's finding that Claim #20-1 is not a priority domestic support obligation.

It is so **ORDERED**.

**SIGNED** this 8th day of November, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE